

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2085 | **DATE** | 7/3/2003 |
| **CASE TITLE** | Kira Morrison vs. Panduit Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. With not genuine issues of material fact remaining, Panduit is entitled to a judgment as a matter of law. Its motion for summary judgment is granted, and this action is dismissed. (8-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUL 7 2003 | |
| | Notified counsel by telephone. | | date docketed | 17 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUL 7 2003

KIRA MORRISON,                )
                              )
           Plaintiff,         )
                              )
     v.                       )    No.  02 C 2085
                              )
PANDUIT CORPORATION,          )
                              )
           Defendant.         )

MEMORANDUM OPINION AND ORDER

Kyra Morrison ("Morrison") has sued her former employer, Panduit Corporation ("Panduit"), charging that her July 2001 termination was racially motivated in violation of Title VII of the Civil Rights Acts of 1964, 42 U.S.C. §§2000e to 2000e-17. Panduit has moved for summary judgment under Fed. R. Civ. P. ("Rule") 56, and both sides have complied with this District Court's LR 56.1[1]. For the reasons stated in this opinion, Panduit's motion is granted and this action is dismissed.

Summary Judgment Standards

Familiar Rule 56 principles impose on movant Panduit the burden of establishing the lack of a genuine issue of material

---

[1] LR 56.1 is designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to Panduit's LR 56.1(a)(3) statement as "P. St. ¶--." Morrison's response is cited "M. Resp. St. ¶--" (though where she does not dispute Panduit's version, a P. St. citation alone suffices). This opinion employs the same "M." and "P." abbreviations in referring to exhibits ("Ex."), memoranda ("Mem.") and reply memoranda ("R. Mem.").

fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "consider the evidentiary record in the light most favorable to the non-moving party ... and draw all reasonable inferences in his favor" (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). And Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001) has echoed the teaching of Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986):

> A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

As with any summary judgment motion, this Court accepts nonmovant Morrison's version of any disputed facts, but only so long as it is supported by evidence. What follows in the Facts section is culled from the parties' submissions in those terms.

### Facts

On July 20, 2001 Morrison's job with Panduit, located in Tinley Park, Illinois, was terminated as part of a reduction in force ("RIF") necessitated by Panduit's financial difficulties (P. St. ¶11). Though Morrison had then been an employee for only 2-1/2 months, she had worked as a consultant to Panduit on and off since August 1997 (id. ¶6). During that time Morrison performed her job well and was given increasingly significant duties and responsibilities (Morrison Dep. Ex. 1).

In late 2000 Morrison's supervisor Jim Toporski ("Toporski") asked her if she was interested in becoming a Panduit employee

(M. Resp. St. ¶8). Morrison responded favorably, but she was told by Toporski she could not be hired until her consulting project ended in April 2001 (id.). Before Morrison was hired as an employee, Toporski arranged for her to meet with Ellen Kohlberg ("Kohlberg"),[2] a Human Resources representative for the IT department (Morrison Dep. 28-29). At that meeting the two discussed Panduit's benefits program (id.). Although Morrison contends that it was a mere formality (M. Resp. St. ¶10), Panduit's Vice President of IT Applications Joanne Tyree ("Tyree") approved the decision to hire Morrison on May 7, 2001 (P. St. ¶10).

In her 2-1/2 months as a Panduit employee Morrison continued to perform well, receiving praise from her supervisor (Toporski Dep. 7, 9). That feedback led Morrison to believe that her own solid performance would prevent her from being laid off, because previous layoffs had been based on performance (M. Resp. St. ¶15). Morrison also claims that Toporski reassured her that Panduit did not operate on a last-hired first-fired rule (id.). But just two weeks after she received those assurances, Morrison was one of the 10 employees laid off in Panduit's RIF (P. St. ¶11).

---

[2] Panduit spells Ellen Kohlberg's last name with an "h," while Morrison's pleadings omit that letter. This opinion follows Panduit's usage for the obvious reason that as Kohlberg's employer Panduit has better access to such relevant personnel information.

3

Faced with a mandate to eliminate some employees from her department, Tyree compiled a list of factors including seniority, performance rating score from the most recent formal evaluations and employees' possession of critical skills (P. St. ¶¶12, 19, 21). Because Tyree limited herself to the year 2000 performance rating when considering each employee, she did not consider the performance of employees hired after the 2000 review had been conducted (id. ¶19).

Based on those criteria, Tyree identified 10 employees for termination: nine white employees and Morrison (P. St. ¶25). Although a number of others who were not terminated could certainly lead to some initially raised eyebrows among jurors who might be asked to consider Morrison's claim of disparate treatment, Panduit has offered a justification for retaining each of them:

    1. Initially Tyree had selected Linda Michalak ("Michalak")(white), who had been employed at Panduit for less than a year (Tyree Dep. Ex. 1). But concerned that terminating Michalak would leave the manufacturing systems group understaffed, Tyree discussed Michalak with the latter's supervisor and determined that she was critical to the continued success of her group (Tyree Dep. 43-44). Based on that information, Tyree decided not to terminate Michalak (id. 44).

2. Chuck Newman ("Newman") (white) and Donna Sroczynski ("Sroczynski")(white) were also not selected despite their low performance ratings, because each had significant years of service to Panduit (id. 45-46).

3. Although he had been a Panduit employee for less than a year, Tony Przytula ("Przytula")(white) was retained based on the results of his fall 2000 performance evaluation (P. St. ¶22).

To turn to Morrison, Panduit's most recently-hired employee, she possessed no critical skills and had undergone no formal performance evaluation (P. St. ¶20). According to Tyree, it was that congeries of factors that led her to include Morrison in the group to be let go. On July 20, 2001 Toporski called Morrison into his office and, with Kohlberg present, told her that she had been terminated (Morrison Dep. 30). During that meeting Toporski said to Morrison "if it were up to me..." (id. 34) and, though he did not finish his sentence, Morrison took that to mean that he would not have terminated her if the decision had been up to him (id.).

Morrison filed a timely EEOC charge of race discrimination. After the EEOC issued a right-to-sue letter, Morrison initiated this action (also on a timely basis) on March 21, 2002.

## Racially Discriminatory Discharge?

Race discrimination can be established[3] in one of two ways: with either direct or circumstantial evidence that the adverse employment action would not have been taken but for plaintiff's race (the so-called direct method), or through the burden-shifting method of <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 802-07 (1973). Here Morrison has attempted both approaches.

Under the direct method a plaintiff must present evidence that on its face supports a reasonable inference of unlawful discrimination (<u>Troupe v. May Dep't Stores Co.</u>, 20 F.3d 734, 736-37 (7th Cir. 1994)). To that end Morrison points to her initial meeting with Human Resources Representative Kohlberg, claiming that Kohlberg gave her the feeling that her race might be an issue (Morrison Dep. 39-40). At that meeting Kohlberg said to Morrison, "Oh, I've seen you around, but I didn't know that you were who you are" (<u>id</u>.). Morrison understood that to mean Kohlberg had been unaware Morrison was black (<u>id</u>. 40). Morrison

---

[3] At this stage, Morrison need not "establish" or "prove" or "show" anything. She bears no "preponderance of the evidence burden;" instead she has the substantially lesser Rule 56 burden of demonstrating the existence of a genuine issue as to a material fact. Instead she must merely demonstrate the existence of a genuine issue of material fact to defeat Panduit's summary judgment motion. Although this opinion will nonetheless most frequently employ one of those quoted terms because that is the terminology used by the cited cases, this Court has consistently imposed that lesser burden on Morrison in testing her claim.

also claims that Kohlberg failed to follow up with her until Morrison told Toporski that she wanted an offer of employment in writing (M. Resp. St. ¶16).

Even with Morrison's version of that meeting accepted as Rule 56 mandates, her evidentiary showing clearly fails to create a reasonable inference of unlawful discrimination. Indeed, Morrison herself concedes that Kohlberg never did anything to mistreat her in any way (P. St. ¶17).

Moreover, although Morrison initially believed Kohlberg was responsible for her termination, the parties now agree that Kohlberg was not involved in the decision (P. St. ¶¶12,16). Instead the termination authority rested exclusively with Vice President Tyree (P. St. ¶12), and Morrison offers no direct evidence that Tyree's decision to terminate Morrison was motivated by race. In her deposition Morrison admits that Tyree never said anything to "suggest that she was racially biased in any way" (Morrison Dep. 38), nor did Tyree ever do anything that Morrison considered as mistreatment (id.).[4] Thus, even with her version taken as true, Morrison has failed to present evidence supporting a reasonable inference of direct discrimination.

Nor is Morrison more successful in her attempt to establish unlawful discrimination using the indirect method. That familiar

---

[4] Indeed, when Morrison filed her EEOC charge, she felt that it was Kohlberg who had been biased and, as already stated, who was responsible for her termination (id. 35, 38).

7

McDonnell Douglas burden-of-production-shifting approach allows a Title VII plaintiff to satisfy her burden of proof by creating a presumption of unlawful discrimination (Loyd v. Phillips Bros., Inc., 25 F.3d 518, 522 (7th Cir. 1994)). In the RIF context, DeLuca v. Winer Indus., Inc., 53 F.3d 793, 797 (7th Cir. 1995) (adapted to this case) has identified the four elements of a plaintiff's prima facie case:

> (1) [s]he is a member of a protected class;
>
> (2) [her] work performance met the employer's legitimate expectations;
>
> (3) [her] employment was terminated; and, because [Panduit] was conducting a general reduction-in-force,
>
> (4) employees not in the protected class were treated more favorably.

Janiuk v. TCG/Trump Co., 157 F.3d 504, 507 (7th Cir. 1998) has added clarification to the fourth element: More favorably treated employees must have been "similarly situated" to the plaintiff.

If Morrison has made such a prima facie case, the burden shifts to Panduit to articulate a legitimate nondiscriminatory reason for its employment decision (Janiuk, 157 F.3d at 507). And if Panduit does so, Morrison (who always bears the burden of persuasion) then has the ultimate task of "showing that the proffered reason is a pretext for race discrimination" (id.).

At this stage Panduit does not contest that Morrison can

8

establish a prima facie case (P. R. Mem. 4 n. 4). Instead Panduit argues that Morrison has offered no evidence to raise a reasonable inference that its legitimate non-discriminatory reason for firing Morrison was a pretext for unlawful discrimination on the basis of race. And so this opinion turns directly to that pretext inquiry.

Panduit's proffered explanation for terminating Morrison as part of the RIF--that she was the last Panduit employee hired, had undergone no formal performance rating and possessed no special skills--surely reflects a legitimate business decision. It is undisputed that Panduit's layoffs were necessitated by financial difficulties (P. St. ¶11). Faced with a mandate to eliminate 10 jobs, Tyree compiled a list of objective race-neutral factors: performance ratings based on Panduit's annual employee review, seniority and an employee's possession of any critical skills. To avoid subjective debates about relative merit, an employee's performance was considered only if he or she had undergone a formal performance evaluation. In the absence of a performance rating, seniority or possession of critical skills was determinative. Years of service to Panduit as a consultant were also excluded from consideration because tenure began to accumulate only after an individual's hiring date, not after the date of assignment to Panduit (Tyree Dep. 41).

To prevail, then, Morrison must show that Panduit's reason

for terminating her was a pretext for race discrimination. Because a Title VII claim requires intentional discrimination, an inquiry into pretextual discrimination turns not on the accuracy of Panduit's explanation but upon its honesty (Mills v. Health Care Serv. Corp., 171 F.3d 450, 458 (7th Cir. 1998)). Koski v. Standex Int'l Corp. (307 F.3d 672, 677 (7th Cir. 2002))(internal quotation marks and citations omitted) explains Morrison's burden:

> To show that an employer's proffered reason is pretextual, a plaintiff must do more than demonstrate that the employer's reason was not good enough to support its decision. Instead, the plaintiff must demonstrate that the employer's reason is unworthy of belief. Specifically, the plaintiff must show that the "nondiscriminatory" reason is not the real reason at all, but is instead nothing but a cover-up for discrimination. Among other things, the employee might present evidence that would show that (1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the discharge; or (3) the proffered reasons were insufficient to motivate the discharge.

Morrison offers two lines of argument in an effort to support the required inference. First, she attempts to call into question the nondiscriminatory character of Tyree's RIF methodology. Second, she suggests that selecting her for termination was a way for Panduit to implement a policy of racial discrimination (M. Resp. St. ¶15). This opinion reviews each argument in turn and concludes that, both singly and in combination, they fail to discredit Panduit's explanation for Morrison's termination.

10

First, Morrison claims that Tyree applied the RIF criteria inconsistently and in a racially biased manner when deciding which employees to terminate. Przytula, a white employee with no critical skills, was retained despite his low seniority because of his excellent performance review (M. Resp. St. ¶22). Further, Tyree decided not to terminate Sroczynski--who tied for the lowest performance rating in 2000--because she had 21 years of seniority (Tyree Dep. 39-40). Morrison also points to the uncontested fact that Tyree sought additional feedback from Michalak's supervisor while denying Morrison the same advantage (Tyree Dep. 8).

Morrison further contends that her years with Panduit should have been included in Tyree's calculation of seniority, arguing that Panduit occupied the status of her joint employer[5] while she worked at Panduit's facility as a consultant. But whether

---

[5] Although joint employer status has been recognized in the labor law context (see, e.g., NLRB v. Western Temp. Servs., Inc., 821 F.2d 1258, 1266 (7th Cir. 1987)), our Court of Appeals has not decided the question whether such a theory would apply to a Title VII claim. As Alexander v. Rush N. Shore Med. Ctr., 101 F.3d 487, 493 n. 2 (7th Cir. 1996)(internal citation omitted) said:

> Thus, we continue to leave open the question that went unanswered in [an earlier case]--*i.e.*, whether an employee of employer X may bring a Title VII action against employer Y when Y is not his employer, but merely someone whose discriminatory conduct interferes with his employment with employer X.

As explained in the text, that question need not be answered here either.

Morrison's consultancy relationship with Panduit amounted to joint employment is completely irrelevant here. For all the employees that were subject to the RIF, Tyree measured their seniority in terms of years as a Panduit employee, without considering anyone's time as a consultant to the company. It is uncontested that such consultants were not subject to the rigorous performance evaluation that was required annually for Panduit employees. And the results of those performance evaluations, or the absence of results in Morrison's case, were one key to Tyree's termination decisions.

But all of those arguments miss the mark in all events because Morrison is really just saying that she could (and, she believes, should) have been retained had Tyree made her decisions differently. And Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1007 (7th Cir. 2002) has reiterated the often-repeated statement that "courts do not sit as super personnel departments to second guess an employer's facially legitimate business decisions." Tyree's testimony plainly supports the rationality--the nondiscriminatory rationality--of her decision to terminate Morrison. None of Przytula, Sroczynski and Michalak, all of whom were retained by Tyree, was "similarly situated" to Morrison.

Similarly, Morrison's assertions that she was an excellent performer cannot go to prove that Panduit's reason for her

12

termination was a pretext. Although it is of course true that an employee's own views about her work performance do not carry weight in that respect (Ost v. W. Suburban Travelers Limousine, Inc., 88 F.3d 435, 441 (7th Cir. 1996)), in this instance Morrison also offers evidence of Toporski's positive feedback regarding her performance, plus his apparent expression of regret at her termination. But the problem is that as honest as those sentiments on the part of Morrison's supervisor Toporski may have been, they do not impugn the equal honesty of decisionmaker Tyree's conclusion that Morrison was one of those to be let go. As Logan v. Kautex Textron N. Am., 259 F.3d 635, 640 (7th Cir. 2001) has again made clear, pretext "does not mean a mistake, but 'a phony reason for some action.'" So that area of evidence fails to raise a genuine issue of material fact as to the legitimacy of the stated reasons for the termination decision (Williams v. Williams Elec., Inc., 856 F.2d 920, 924 (7th Cir. 1988)).

Morrison's second line of pretext argument attempts to show that her termination was part of a company-wide pattern of racial discrimination at Panduit. And to that end she advances a good many facts as to other African-American Panduit employees and consultants.

Thus although there were four African-American IT Department employees who were not terminated in the RIF, Morrison counters

13

that not one of them had been promoted to manager even though each had many years of service with Panduit (M. Resp. St. ¶26). From 1997 to 2001 there were five or six African-American consultants at Panduit, but all full-time employees hired during that period were white (M. Resp. St. ¶15). Morrison was the first African-American IT Applications Department employee hired since November 1989, while over that same time period the Department had hired 45 white candidates (id.). Morrison had interviewed for a full time job at Panduit in 1995 and had been denied employment (id.). Additionally, Morrison offers the testimony of Paulette Davis ("Davis"), an allegedly qualified black interviewee who was rejected twice for full-time positions at Panduit (id.).

It is quite true that statistical evidence can be probative in support of a claim of intentional discrimination (Adams v. Ameritech, 231 F.3d 414, 423 (7th Cir. 2000)). And that may be so in the RIF context as well (see Radue v. Kimberly-Clark Corp., 219 F.3d 612 (7th Cir. 2000)). But here what Morrison has adduced does not raise a genuine issue of fact that decisionmaker Tyree's RIF criteria were a pretext for racial discrimination--the critical question here.

It will be remembered that nine white employees as well as Morrison were terminated. Statistically there is no significant disparity between the white (nine out of 51, or 17%) and black

14

(one out of five, or 20%) employees terminated.[6] Furthermore, statistics such as those offered by Morrison "can only show a relationship between an employer's decisions and the affected employee's traits; they do not show causation" (Radue, 219 F.3d at 616). Because the comparative numbers in Tyree's decisions about which employees to retain and which to terminate may stem from many reasons other than discrimination, "causation is suggested only when the other variables are shown to be insignificant" (id.). Here it would distort the record to label the "other variables" that entered into Tyree's decision to terminate Morrison as "insignificant"--as the earlier discussion has shown, precisely the opposite is true. Hence Morrison's evidence of Panduit's other practices creates no reasonable inference that Tyree's reasons for terminating her were pretextual.

On that score it must be recognized that not one of the circumstances that Morrison seeks to label as suspect or worse even arguably bear on the motives or intention of decisionmaker Tyree. So, for example, there is no evidence that Tyree was either the decisionmaker or otherwise involved in denying Davis employment with Panduit. Likewise, in 1995 Morrison

---

[6] Moreover, it is not necessary to be a statistics guru or to crunch the numbers in standard deviation terms to recognize the unreliability of any conclusions derived from such a small universe, where the shift of even one employee would produce such a wide swing in the percentages involved.

15

unsuccessfully interviewed for employment at Panduit with Toporski's predecessor, and again there is no evidence that Tyree had any part in the decision to turn her down. On the other hand, even though Morrison characterizes it as a mere formality she concedes that Tyree did approve the decision to hire her in 2001 (M. Resp. St. ¶10)--and courts have understandably been somewhat skeptical of an employee's claims of discrimination where the same person who hired the employee later fires him or her, especially within a brief time frame (Herrnreiter v. Chicago Hous. Auth., 315 F.3d 742, 747 (7th Cir. 2002), listing cases).

In sum, this final effort to generate a reasonable inference that Tyree's decision to terminate Morrison was a pretext for racial discrimination is equally unsuccessful. Morrison strikes out on this final ground as well.

### Conclusion

Based on the evidence she has provided, Morrison fails to create a reasonable inference that Panduit's stated explanation was not the actual reason for firing her or that racial discrimination played any role in that decision. With no genuine issues of material fact remaining, Panduit is entitled to a judgment as a matter of law. Its motion for summary judgment is

granted, and this action is dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date:  July 3, 2003